**SIGNED this 7 day of October, 2019.**



```
_____
        John T. Laney, III
     United States Bankruptcy Judge
```

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# VALDOSTA DIVISION

| | |
|---|---|
| **In re:** ) | |
| ) | |
| **JUSTIN L. FOLSON** ) | **Case No. 17-70361-JTL** |
| ) | **Chapter 13 Proceeding** |
| Debtor. ) | |
| ) | |

| | |
|---|---|
| ) | |
| **JUSTIN L. FOLSON** ) | |
|   Plaintiff, ) | |
| ) | **Adversary Proceeding** |
| v. ) | **No. 19-07012** |
| ) | |
| **RENASANT BANK** ) | |
|   Defendant. ) | |

**MEMORANDUM OPINION GRANTING IN PART AND DENYING IN PART
DEFENDANT'S RULE 12(b)(6) MOTION TO DISMISS**

This matter came before the Court on Defendant Renasant Bank's Rule 12(b)(6) Motion

to Dismiss (the Motion). (A.P. Doc. No. 11). Renasant Bank (Renasant) filed this Motion prior to

filing an answer under Federal Rule of Bankruptcy Procedure 7012. For the reasons stated

below, the Court grants in part and denies in part the Defendant's Motion to Dismiss for Failure to State a Claim.

I.  **Factual History**

This adversary proceeding arises out of the underlying bankruptcy case of Justin Folson (Folson). (Case No. 17-70361-JTL). Plaintiff Folson owned real property, with a mortgage to Defendant Renasant, until March 5, 2019 when his interest in the property was extinguished by foreclosure sale. (A.P. Doc. 1 ¶13; A.P. Doc. 11-1 ¶1). Prior to foreclosure, Plaintiff asserts that he had requested several loss mitigation packages from Defendant. (A.P. Doc. 1 ¶11). Plaintiff claims to have not received the packages despite assurances from Defendant's representatives that the packages were in the mail and would arrive shortly. Id. Plaintiff states that he did not receive a loss mitigation package until "late January/early February." Id.

Upon receiving the package, Plaintiff worked to ensure that the application was completed and properly submitted. Id. On February 25, 2019, Plaintiff received a letter from Defendant stating that his loss mitigation package had been received. Id. at ¶ 12. Plaintiff alleges that he then took it upon himself to contact Defendant's foreclosing attorney to ask if there was any outstanding information he needed to process his application. Id. Defendant's foreclosing attorney stated that Plaintiff needed to send in one additional paystub and, according to Plaintiff's alleged facts, Plaintiff "immediately returned the requested paystub." Id. Plaintiff alleges that after that phone call he did not have any addition inquiries from either Defendant or Defendant's foreclosing attorney seeking additional information. Id. Plaintiff then received a letter dated March 5, 2019 from Defendant stating that the package had been received and would take "approximately 30 days to review [the] completed loan modification application/borrower response package." (A.P. Doc. 1 Ex. B, Doc. 17). Later, on March 11, 2019, Plaintiff received a

2

letter from Defendant that stated the Loss Mitigation Application Package was complete and would be reviewed within 30 days of "03/05/2019" and thus, Plaintiff was "entitled to certain foreclosure protections" as a result of the completed application. (A.P. Doc. 1 Ex. C). As stated above, however, the property was sold in a foreclosure sale on March 5, six days prior to the letter stating the completed application had been received.

After the foreclosure, Plaintiff filed a voluntary bankruptcy petition on March 28, 2019. (See Case No. 17-70361-JTL, Doc. 1). Plaintiff Folson then filed this complaint on May 10, 2019. (Complaint; A.P. Doc. No. 1). The Complaint asserts three causes of action: Wrongful Foreclosure[1] (Claim I), actual and constructive fraud by misrepresentation of material facts[2] (Claim II), and violation of the Real Estate Settlement Procedures Act (RESPA)[3] (Claim III).

### II.     Legal Standard

Under Federal Rule of Civil Procedure (F.R.C.P.) 12(b)(6),[4] a party may present a defense enumerated in Rule 12(b) on a motion prior to submitting a responsive pleading; this includes a motion to dismiss for failure to state a claim. When considering a motion to dismiss for failure to state a claim under F.R.C.P. 12(b)(6), the Court must accept the allegations in the complaint as true and must also construe such allegations in the light most favorable to the non-moving party. *Hunt v. Amico Properties, L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016). Further, "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

---

[1] This Claim is brought under O.C.G.A. § 23-2-114.
[2] This Claim is brought under O.C.G.A. § 23-2-52.
[3] This Claim is brought under 12 U.S.C. § 2605 and 12 C.F.R. § 1024.41.
[4] Made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7012.

will not do." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). Additionally, "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true." *Id.* Here, because Defendant Renasant Bank brought the motion, the Court must construe the facts in favor of the Plaintiff and against the Defendant Renasant. Additionally, because there are three separate claims listed in the complaint, the Court must consider each claim in turn to determine whether such claim should be dismissed under the 12(b)(6) motion.

### III. Discussion

#### a. Wrongful Foreclosure

Plaintiff's first claim for relief is asserted under O.C.G.A. § 23-2-114—that Defendant engaged in a wrongful foreclosure sale of Plaintiff's home. In Georgia, a plaintiff seeking a claim for wrongful foreclosure must establish "a legal duty owed to it by the foreclosing party, a breach of that duty, a causal connection between the breach of that duty and the injury it sustained, and damages." *In re McDaniel*, 523 B.R. 895, 907 (Bankr.M.D.Ga. 2014) (quoting *Heritage Creek Dev. Corp. v. Colonial Bank,* 268 Ga. App. 369, 371 (Ga. Ct. App. 2004)), see also *Racette v. Bank of Am., N.A.,* 318 Ga. App. 171, 174 (Ga. Ct. App. 2014). The above elements required to state a claim for wrongful foreclosure are well settled and serve to set the framework for how a plaintiff is to allege a wrongful foreclosure claim.

Plaintiff's argument for the wrongful foreclosure claim revolves around a good faith requirement found in O.C.G.A. § 23-2-114: "Powers of sales in deeds of trust, mortgages, and other instruments. . .shall be fairly exercised." O.C.G.A. § 23-2-114. Standing alone, that line creates a requirement of good faith for parties involved in such matters. However, Georgia courts

4

have repeatedly refused to hold such requirement as the only "test" for a wrongful foreclosure claim. Consequently, in Georgia a plaintiff must still meet the aforementioned elements.

Next, Defendant states "[i]f a party is in default on the underlying debt obligation, then no claim for wrongful foreclosure or attempted wrongful foreclosure can lie." (A.P. Doc. No. 11-1). However, that does not appear to be a correct assertion. The Northern District of Georgia held "a claim for wrongful exercise of a power of sale can be asserted *even though the debt is in default.*" *Sheely v. Bank of America, N.A.*, 36 F. Supp.3d 1364, 1378 (N.D.Ga. 2014) (emphasis added). Because this is a 12(b)(6) motion, the facts alleged by the Plaintiff are to be accepted as true and, additionally, must be construed in the light most favorable to the Plaintiff.

Here, Plaintiff states that he diligently pursued a loss mitigation application from his mortgage servicer and that Defendant failed for some time to provide the package to allow Plaintiff to complete the application for a loan modification. It is here that O.C.G.A. § 23-2-114's duty to exercise in good faith becomes relevant—Defendant owed a duty to Plaintiff to act in good faith as a result of their relationship. As Plaintiff alleges however, there were multiple failures to provide the requested paperwork that Plaintiff contends resulted in a breach of the aforementioned duty to act in good faith. Defendant, as Plaintiff's mortgage servicer, had a duty to transact and communicate with Plaintiff in good faith. While this duty does not necessarily require that Defendant provide the loss mitigation package to any person who requests one, it *does* require that Defendant follow through on statements made to persons in Plaintiff's position.

Further, this request for a loss mitigation package was originally made in October 2018, then again in November, and several additional times beyond the November request. (Complaint; A.P. Doc. No. 1). Defendant had repeatedly informed plaintiff that the package was "in the mail" and should arrive anywhere between five and ten business days. Id. The Court can then

5

reasonably infer, based on the complaint, that had Defendant delivered the loss mitigation package when Plaintiff first submitted a request, Plaintiff would have had a greater opportunity to potentially stave off the foreclosure.

Finally, Defendant contends that Plaintiff failed to allege any damages in his complaint and therefore his wrongful foreclosure claim must be dismissed. The Court believes, however, that because the complaint alleges foreclosure of the home, the foreclosure *itself* is a sufficient allegation for damages. Additionally, the Eleventh Circuit has held that a Plaintiff seeking damages for wrongful foreclosure claim must "establish that the property at issue was actually sold at foreclosure." *Jenkins v. McCalla Raymer, LLC.*, 492 Fed. Appx. 968, 972 (11th Cir. 2012). Here, because both sides agree that Plaintiff's real property, which also served as Plaintiff's residence, was sold at a foreclosure sale the allegation of such sale is sufficient to allege damages. Finally, the foreclosure obviated Plaintiff's ability to participate in the loss mitigation program. This rendered moot Plaintiff's opportunity to pursue the loan modification he had been diligently seeking. Consequently, the Court finds that this is enough of an allegation of damages.

As a result, construing Claim I in the light most favorable to the Plaintiff results in a potentially valid claim. It is entirely possible that Plaintiff will be able to introduce evidence that shows a breach of duty on the part of the Defendant as well as a causal connection between a breach and any potential damages arising from such breach.

    b. **Fraud**

        1. **Actual Fraud**

Plaintiff's second claim is for fraud, both actual and constructive, by way of "misrepresentation of material facts." (Complaint; A.P. Doc. No. 1 ¶ 18). First, the Court will consider the actual fraud claim. To state a claim for actual fraud in Georgia, a Plaintiff must prove five separate elements:

> (1) that the defendant made representations; (2) that defendant knew the representations were false; (3) that these representations were made intentionally and for the purpose of deceiving the plaintiff; (4) that plaintiff reasonably relied on these representations; and (5) that as a proximate result of the misrepresentations plaintiff incurred damages.

*GE Life and Annuity Assur. Co. v. Combs*, 191 F.Supp 1364, 1371 (M.D.Ga. 2002).

Here, even construing Plaintiff's pleading in the light most favorable to his argument, the facts presented in the complaint simply do not meet the above elements for a claim of actual fraud. Plaintiff argues that he relied on Defendant's written representations stating the foreclosure "would cease during a thirty-five day review period once the application was complete."[5] (Complaint; A.P. Doc. No. 1 ¶ 19). Plaintiff then asserts that on March 5, 2019, the day the real property was sold in a foreclosure sale, Defendant represented to Plaintiff in writing that the completed application had been received and was "under review." Id. Plaintiff has attached copies of separate letters sent by Defendant to Plaintiff; the letter dated March 5, 2019 simply states "We have received your request to be considered for a loan modification or other foreclosure alternative. Within 5 business days, we will review the documentation you provided and notify you by mail if further information is needed." (Complaint; A.P. Doc. No. 1 Ex. B).

---

[5] For the purposes of this argument, the Court will consider "once the application was complete" to refer to the time when the completed application was received by the Defendant. While this may certainly prolong the date in which the application was "complete," the Court fails to see any other way in which this phrase can be interpreted and, more practically, any other way in which the Defendant would be aware of the completed application.

This letter does not contain any sort of language similar to that which Plaintiff argues he relied upon.

At oral argument, however, Plaintiff appeared to argue that it is actually Exhibit C, a letter from Defendant sent to Plaintiff and dated March 11, 2019, that contains the foreclosure protection provision. Indeed, this letter states that the application "appears complete" and that the Plaintiff is "entitled to certain foreclosure protections under State or Federal law." (Id. at Ex. C). Further, the March 11 letter states "Your application will be reviewed by Renasant Bank within 30 days of 03/05/2019." Id. It appears that this is what Plaintiff bases his fraud claim on. Plaintiff argues that he relied on the foreclosure prevention language however, the letter including this language was not sent until *after* the foreclosure sale of Plaintiff's property. Therefore, Plaintiff could not have relied on such representation prior to the foreclosure sale. Further, while the March 11 letter *does* include the date of the foreclosure sale, March 5, it is the understanding of the Court that the inclusion of that date was to show that the letter was received on that date and was to be reviewed within 30 days of that date—not that the foreclosure protection language was to be applied retroactively to that date.

In conclusion, Plaintiff failed to plead facts necessary to allege a claim of actual fraud under Georgia law. Therefore, Plaintiff's claim for actual fraud is dismissed.

### 2. Constructive Fraud

In Georgia, constructive fraud "exists only as an equitable doctrine." *Irvin v. Lowe's of Gainesville, Inc.,* 165 Ga. App. 828, 830 (Ga. Ct. App. 1983). A claim for constructive fraud does not "support an action for damages" and, further, "in order to give rise to an action for damages, the defendant's fraud must be actual." Id. The Court has already rejected Plaintiff's

claim of actual fraud. Therefore, because the claim of constructive fraud cannot sustain an action for damages, Plaintiff's claim of constructive fraud is dismissed.

### c. Real Estate Settlement Procedures Act (RESPA)

Plaintiff's final claim for relief is that Defendant Renasant Bank violated the Real Estate Settlement Procedures Act (RESPA) when it failed to stay the foreclosure sale of Plaintiff's home. RESPA's loss mitigation procedures are enumerated in 12 C.F.R. § 1024.41—Plaintiff focused on subsection (f), which is titled "Prohibition on foreclosure referral." Plaintiff asserts that RESPA prohibits a mortgage servicer from conducting a foreclosure sale until the servicer "(a) notifies the borrower of its decision regarding loss mitigation options, (b) the borrower rejects all loss mitigation options offered, or (c) the borrower fails to perform under an agreement on a loss mitigation option." (Complaint; A.P. Doc. No. 1 ¶23). While these elements do state what is required of a servicer to initiate foreclosure proceedings, Plaintiff's argument fails to consider the first requirement, in § 1024.41(f)(1)(i), that the borrower's loan must be less than 120 days delinquent. Without the loan being less than 120 days delinquent, Defendant is not bound by the regulation when seeking to initiate a foreclosure sale.  Therefore, the Court must reconcile Plaintiff's alleged facts with RESPA's regulations.

Plaintiff seeks to use the procedures outlined in RESPA § 1024.41(f) as shelter from Defendant's foreclosure action. However, such procedure requires that the borrower's mortgage loan obligation be less than 120 days delinquent in order to receive the protections afforded in the second part of the subsection, (f)(2). Here, Plaintiff fails to allege whether or not the loss mitigation package had been completed and returned prior to the running of the prescribed 120-day standard. The attached exhibits show that that the mortgage servicer received the package on March 5, 2019 but fail to include the date when the loan became delinquent in the first place.

Therefore, there is no need to advance to the second part of the subsection which Plaintiff stakes his claim on, and as such, this claim is without merit and is dismissed.

### IV. Conclusion

Plaintiff filed this adversary proceeding alleging three separate claims: wrongful foreclosure, fraud, and a violation of the Real Estate Settlement Procedures Act. The Defendant has brought a 12(b)(6) Motion to Dismiss Plaintiff's complaint for failure to state a claim upon which relief can be granted. For the reasons stated, the Court will deny the Motion with respect to Claim I and will grant the Motion with respect to Claim II and Claim III. An order will be entered in accordance with this opinion.